United States v. Courtney Schloss, 22-3111 This case is consolidated with another matter, U.S. v. Duvon Wilson, but that's taking on submission. So we'll hear first from Mr. Urwitz on behalf of Mr. Schloss. Good morning, Your Honors. May it please the Court. My name is Steven Urwitz, and I'm arguing on behalf of Defendant Appellant Courtney Schloss. Schloss challenges three special conditions of supervised release imposed by the District Court without any particularized finding of need. I'd like to focus initially on the fourth of those special conditions, the association provision, since in my view it's the most problematic and presents a host of issues, and some of them intellectual issues. But the provision provides you shall not associate with or interact in any way, including through social media websites, with any gang members or associates, particularly members and associates of any Blixey gang or frequent neighborhoods or turf known to be controlled by the Blixey gang. This condition has at least four problems. First, it has no mens rea requirement, which the government says it's not a problem and should be read in. Second, there's no definition of what constitutes a gang associate. Third, what it means to frequent a gang neighborhood is completely vague and subjective. And fourth, there is no limitation concerning the purpose of being or frequenting a Blixey gang neighborhood. Schloss contains that the term gang associate is too vague. The government contends that associate is well-defined. Thus, it points to Webster's Dictionary, which defines it as one associated with another, nothing like a definition that uses the very term seeking to be defined as the definition. But it also adds a partner, a colleague, a companion, or comrade. So under the government's definition, the girlfriend of a Blixey gang member presumably is a gang associate. So let me ask you this. Mr. Schloss is doing something like 10 years. How long is he serving? Ten years. Ten years. Okay. So these conditions will not kick in until he gets home. True. Right. So when he gets home, do we have any idea how he would figure out who is a current associate? Let's say we had a definition for associate. Who's associated with the Blixey gang, if the Blixey gang still exists, and what their turf is. How, can you think of a way that he can do that when he gets home? Even if he could do it the day he got arrested, right, when he was allegedly associating, sorry to use the word again, with these folks, how do we determine that when he gets home? So presumably he could ask his probation officer, but in my view that itself may present a problem because the district court is not supposed to be delegating the interpretation of the prohibition to the probation officer. Do we think that a probation officer or just a line probation officer sort of, do we have reason to think probation officers have that intel? That they sort of know who's got what turf on any given month or week or year? Judge Mariam, I completely agree with you that this is a problematic definition. As a matter of fact, you know, you alluded to the fact that what is Blixey gang turf? The indictment just says they're located in Brooklyn. I've seen other gang indictments which say they're located at, you know, 145th Street to 147th Street. There's nothing in the probation report, there's nothing in the indictment that even gives other than to say in Brooklyn where the defendant, you know, used to live, is located. So I agree with you, this is, this is... Does it make sense to have a provision that bars him from associating with members of the gang with whom he sold guns for quite a while? Judge Chin, I think there could be a condition that makes sense. I think similar to the condition that's found in the probation statute, which says you shall not associate unnecessarily with a particular group. That's not what this provision says. This just says generally, you shall not associate... Were there objections to any of these conditions below? There were no objections. We made an argument and, you know, that, certainly it could be reviewed on the plain error standard, but moreover, these provisions only appear for the first time in the final PSR. And we've gotten lots of these supervised release conditions and there's, you know, the issue isn't raised in front of the trial judge when it could be fixed easily and then we see them on appeal and what, I mean, what are we supposed to do? You know, it's a little bit difficult. Your Honor is correct. There have been a number of decisions recently on these conditions. I can tell you, Your Honor, that now when I've appeared before courts, they are focused because there have been so many cases now and they do go back and make particularized findings as to these special conditions. I think a lot of it has to do with recent case law. So I think in the future, yes, I think courts will be focused on, but here we're dealing with conditions that were proposed at a time where I think courts were just imposing them. Also, ten years from now when he's out, if this becomes an issue, he can go back to the court, right, and ask for an adjustment? But part of the problem is, for example, the first condition about the search condition requires reasonable cause, not simply that a crime was committed, but that a violation of supervised release occurred. So you have these vague supervised release. We have lots of cases that say for a supervisee, a reasonable suspicion provision is appropriate or is legal. Such a condition would be proper if the other conditions, the special conditions, were very clear. Here we're dealing with special conditions that are not clear. And that's part of the problem here. As Judge Merriam pointed out, who knows what's a gang turf? And what happens if, what does it mean to frequent that gang turf? I'd like to think that I'm frequently arguing before this court because in the past 20 years I've argued dozens of times. Comparable to somebody who's argued once, it probably is frequent. Comparable to somebody who's in an appeals bureau who's arguing every month. That's not frequent. How do you make it more specific? I mean, it wouldn't be reasonable to say frequent means, you know, three times in one month. I mean, it's not practical, you know, and to some extent these conditions are a starting point. And there is indeed back and forth between the individual and the probation officer. I think one way, Judge Finn, to make it more definite and clear is to tie it to a purpose. The problem here is there's no purpose. It just says... Is it the purpose apparent? He was committing crimes with the Blixie gang. I understand, but the point is the prohibition has no, meaning it's frequent in a Blixie gang neighborhood. There's no limitation as to why. If I'm driving on a bus through this gang... The intent is that if he refrains from associating with known gang members, he's less likely to offend again. That's clearly a purpose, but that's not what the prohibition says, and that's what I think. If the prohibition would say something like that, then I wouldn't be up here arguing about it. What if he had a child that lived in... Let's say we could identify their turf. What if his child lives there? That's why it should be tied to a purpose. You shouldn't associate with members of the Blixie gang group for... The way the probation says is unnecessarily. Now, that at least gives some meaning to it. Here, you'd say, if I have to take care of my child, that's necessary. But to just have no meaning, there's certainly a laudable... Can we, in the Green case, affirm a similar provision that barred the appellant from associating with any member or associate of the Blood Street gang? You're trying to bear with me for a moment, because I think... United States versus Green? In Green, my recollection is that it was still tied to more of a purpose. Maybe on rebuttal, if you want, you can address it, but I think that's what the case says. It's really the combination of all these factors that I think make this association so vague. Associated, the term gets thrown around, although it's not cited in our brief. We have a case, McMillan, where we affirmed a condition barring the defendant from allocations involving children. But there, there was no issue with frequenting. And because it was tied specifically to some purpose about involving children. That's why I think the cases that the government relies on, they're tied to specific purposes, which is what's not present here. Just as far as the other conditions, the mental health condition, there's no evidence in the record that he takes any prescribed drugs. The PSR mentions nothing about it. At the time of his plea, he was asked whether he had taken any prescription drugs within the last 24 hours. He denied it. So I just don't see how you could say that something is obvious from the record when it's based on facts that are not even in the record. He said he saw a psychiatrist every few months. He's been hospitalized for depression, anxiety, a conduct disorder. Why is it not a basis for a mental health condition? But the problem is it goes further than that and says take all prescribed medicines. Does that mean take prescribed medicines that he was taking at the time? Does that mean prescribed medicines that now the mental health professional advises? It says continue to take your medications. To me, continue sounds like he had to have been on it. When the record is he wasn't on it. And he was asked specifically, do you want mental health treatment? And he said no, I don't need it now. You can continue to take a medicine that is prescribed in the future if you continue to take it in the future. But judge Jacobs, continue sounds like the way the provision. If he knows he's not taking any, then he ought to interpret it to mean that as and when he's prescribed something, he should take it continuously. There are a number of cases that say that the forcibly medicated. Unless your client is a grammarian, it sounds like you're inventing complexities that ordinary people would not be troubled by. Judge Jacobs, the problem with reading it that way then raises the whole issue of because I think it dissatisfied a requirement of forcing someone to take medication. Isn't the point that if he is prescribed medication, he is supposed to take it? Because in these situations, if you don't take your medication, then you go and do bad things. But the point is if he's prescribed it, he's supposed to follow his doctor's instructions. Isn't that the point of that? Let's say he's of the view that I could do this without medication. Certainly there's a school of thought that says that I should treat it through therapy as opposed to medication. I don't want to be forced to take medications, psychotropic medications that I don't want. That's the problem here. Thank you, counsel. You deserve two minutes for rebuttal. We'll hear from the government. May it please the court. My name is Matthew King. I'm an assistant United States attorney in the Southern District of New York. I represent the United States on appeal. I also represented the United States on this matter before the district court. This panel should affirm the district court's decision and the defendant's judgment of conviction because Judge Stein did not commit any error, much less any plain error, in imposing the three challenged special conditions of supervised release. While Judge Stein did not state the specific reasons for the three challenged special conditions on the record, it's clear in the record itself what the reasons for those conditions are, and each of those special conditions is reasonably related to specific relevant statutory sentencing factors. So, counsel, I don't disagree that the conditions writ large are sort of understandable in light of the record, but these conditions writ large are actually full of small details, any one of which could be used to trigger a violation. It seems to me that all three of the challenged conditions implicate rights that we in the Supreme Court have identified as fundamental rights. So the fundamental right to be free of unreasonable searches and seizures, the fundamental right to association, and the fundamental right to be free of forced medication. Those have all been identified. So where we're talking about aspects of these conditions, the specifics, I hear you, that generally a search condition might be supported, generally a mental health condition almost certainly is supported, but when we get into the specifics, when they touch on such fundamental rights, don't we have law that says, look, you've got to just at least give an explanation why this is necessary, why forced medication condition is necessary, why the TERF condition, which could affect his ability to associate with immediate family or attend the church he's gone to since he was a child, right? Why don't we require any explanation for that on this record? So, Your Honor, the case law in this circuit is such that, and this is addressed in the Rachmatov case kind of embedded in what it decides to do, but there is no case law in this circuit that says that you have to specifically state the reasons or that the court, this panel, should not on its own be able to identify in the record what the reasons are, so long as there is evidence for that. So in cases where, you know, this is the Rachmatov case, finds this in some cases, or for some of the conditions, there wasn't any evidence in the record that would show what the reason for the special condition was, and in the absence of that, the court should remand it for the district court to determine whether there was sufficient basis for those conditions. But where there is... The basis for the medication condition in this record? There's substantial factual basis for the medication condition in this record. Even though he's not currently medicated, as far as the record reflects, or doesn't have a history of psychotropic medications? So, first of all, there is in this record evidence that Mr. Slosh was prescribed an antidepressant and was diagnosed with anxiety and conduct disorder. Whether he was at present at the sentencing prescribed medication, I don't recall, and I believe he said he wasn't taking medication in the colloquy establishing that he was competent to plead. But there's substantial evidence in the record, including he was, as Judge Chin identified, under the care of a psychiatrist at the time of his plea, that he had been hospitalized for depression and anxiety. And more so in the PSR, and this is at paragraph 134, that as early as 14, he was diagnosed with oppositional defiant disorder with narcissistic tendencies. So a mental health condition, absolutely supported by the record. I do not disagree. Yes, Your Honor. I'm asking about the medication sentence of that condition. Certainly. And there... So is it your position that the fact that he has a history of mental health issues and at some point in his life was prescribed antidepressants is sufficient to require him, even if at some point in the future he disagrees, to take medication prescribed by whatever medication is prescribed to him, mental health or physical health, which it doesn't actually differentiate. So I think what the condition says is you must continue to take any prescribed medications unless otherwise instructed by a health care provider. And this assumes 10 years in the future when he is released, to the extent he was put on medication either while incarcerated or at some point on supervised release, that he should continue to take the medication he's been prescribed. That question of whether that, his decision to not take whatever medication he's prescribed, this Court doesn't need to reach for two reasons. The first is, this is here on plain error review. And there is no case law, and the defendant has not identified any case law, and the government hasn't found any case law in the circuit, that says this type of condition is not lawful. So the district court did not commit any error. There's no evidence of that. There's no evidence, even if it had committed an error, that that error was plain and obvious because there's no binding case law saying so. Well, there's a Supreme Court case law saying an individual has a constitutionally protected liberty interest in avoiding involuntary administration of medication. Yes, Your Honor. So I think what some of the Supreme Court cases then go on to define, and this is the Riggins case, that such medication conditions are appropriate where the defendant is a danger to himself or others or such treatment is in the inmate's medical interest. There is evidence.  Certainly, Your Honor. I don't think. Those are forced medication for inmates, right? I think this is even less restrictive than that. This isn't, in fact, an inmate being prescribed medication by a facility and, in effect, being forced by the facility to take that medication. That inmate arguably doesn't have a choice. So what if he prescribed medication? So I don't know what's happening now, but I can tell you that 10 years ago, people would be sent home from BOP with a two-week supply of whatever medication had been prescribed and required in BOP. So they get home with their two weeks. If he refuses to take that, he's in violation of his conditions of supervised release. As a result, he's subject to search without a warrant of everything, including his cell phone and all of his electronic devices. How is that not a problematic situation for him? Your Honor, I can think of facts where perhaps it is, but those facts aren't presented before Your Honor for two reasons. The first, as I addressed, is it's up here on plain error review, and there is no controlling case law laying out the rule that Your Honor just articulated. It doesn't exist in the circuit. It doesn't exist in the context of supervised release or even in incarcerated persons from the Supreme Court. There are principles articulated that one might use to argue that rule, but the case saying so, as Your Honor just articulated it, doesn't exist. So it can't be reversed on the basis that – If we know that we have this case law that says a condition that implicates a fundamental right, like freedom from forced medication, is justifiable and permissible only if the deprivation is narrowly tailored to serve the compelling interest. That's not enough for us to say this is not narrowly tailored and under plain error that it's clearly not narrowly tailored. We have to have a case that says – it's sort of like a qualified immunity analysis. It has to be squarely on point. Yes, Your Honor. In the plain error review context, the broad principle can't be the case that says it's so obvious to the district court that that condition as applied here, that principle applied to these facts, must have been so clear and obviously wrong that this Court should reverse it on plain error review. That's precisely why the plain error review standard is as deferential as it is, because Your Honors here don't have the benefit of the objection being raised below, further fact-finding being done, the district court evaluating arguments by the defendant and by government, and you having a fulsome record to make the determination of whether that principle was appropriately applied here or not. What's the harm of a remand for explanation? Because what's missing here is an explanation, right? I don't agree, Your Honor, that what's missing here is an explanation. I think there is a sufficient factual basis in the record that a mental health treatment condition with a medication condition embedded in it is appropriate on the facts. And that's for the reasons that I stated before. And just to give you a little bit more clarity here, I know that this Court hasn't resolved the matter and that, as you know, I said before, since 2014, he has been diagnosed with serious mental health issues. At 16, he committed suicide or he attempted to commit suicide while incarcerated. At the plea, he was under the care of a psychiatrist and told the Court that he had been diagnosed with a number of these mental health issues, and he had been on antidepressants before. But I want to address one other reason why this question isn't right for Your Honors now. It's that because whether this presents a due process challenge in the future is wholly speculative. He has many years before his unsupervised release. At that point, he may, in fact, never even be prescribed medication. And even if he was prescribed medication at that point, he may not object to taking that medication. And if he did, if all those things were satisfied and he, in fact, did object to taking that medication, then the defendant would have a right to present this argument to the district court as an argument why he should not be violated on that basis, and the court would have the opportunity to do fact-finding and make an informed and talented decision about whether Mr. Schloss's refusal to take a particular medication is, in fact, a violation of that condition, whether that condition needs to be modified for one reason or another. And that's why it's not appropriate for this panel to make a determination about whether this condition is unlawful. This condition is a standard condition. This Court has... It's not a standard condition. It is a standard special condition. It's a typical special... But it's a commonly applied special condition... Yes, Your Honor. ...in this district as well. Yes, Your Honor, it is. And there's no case that the government has found and none that the defendant has pointed to where this Court has said that this condition is unlawful or invalid. It's an issue that may present itself later on, but it's not being presented here, and the due process challenge hasn't occurred. And a hypothetical due process challenge shouldn't be the basis for this Court finding on plain error review that Judge Stein inappropriately imposed what is a typical and frequently used standard condition of supervised release. Again, it's not a standard condition, counsel. Sorry, special... I'm sorry. No, I apologize. I'm using standard in a non-term of art sense. It's a typical special... It is a typical special... Yes, Your Honor. It's a common condition. It is a commonly used special condition by probation and by courts routinely in this district. I know my colleague raised a number of issues on the association condition. I realize that my time has gone. I'm happy to address those very briefly, if Your Honor would like to hear that. I just want to point out kind of similarly again, the condition of non-association is cabined, as this Court has said, by the fact that one cannot inadvertently or accidentally or incidentally violate the non-association condition. So, Judge Merriam, you raised a hypothetical of he gets out 10 years from now, and how is he even going to know who's a member of the Blickey gang or not? It's not his burden to determine that. The condition is, as cabined by this Court's multiple cases, if he doesn't know someone's a member of the Blickey gang, then he can't be violated for that. So it doesn't present... Do you think the condition doesn't say knowingly associate, then? I mean, that's sort of... I wonder why we have to cabinet with case law. But let me just ask you to answer, and the answer may be clear. My question about the turf, as opposed to the association. Does that... That seems to me that it would impact associational rights, fundamental rights to associate with immediate family, potentially, or to frequent the church of one's choice. It would certainly impact employment opportunities. But focusing on the fundamental rights of religious practice and family association, how do we deal with that? Certainly, Your Honor. And I just... As a preface to that, I just would like to point out that this, again, is a commonly used special condition, and this Court has seen this almost identical condition many, many times before and has affirmed essentially all those times where there is a factual record for there being a need for this condition. So, again, on plain error review, there is no case law in this circuit or that the government is aware in the Supreme Court that says this condition is invalid for the reasons Your Honor is highlighting. But there's also a separate reason, which is that that's a hypothetical due process violation that has not yet occurred and may not ever occur in the future. And I don't... The government's view is that it's not appropriate as a basis to invalidate a condition on plain error review that there may be in the future a hypothetical due process violation because he's being restricted from accessing a church of his choice. I'd also note that this is supervised release. It is limited in time. He's not forever barred from going anywhere or associating with anyone. It is after someone has been released, after engaging in, as this defendant did, a years-long conspiracy with a number of other members of a particular gang to traffic almost 100 guns from the South to this district where those guns, at least in three or four instances, were used in shootings, that that individual has certain conditions of supervised release. One of those is not associating with members of that gang or frequenting territory where that gang is known to control or that's known to be their turf. In cases where the condition was even broader, and in the Rachmatov case, it's even broader in both the language with the area with which the individual should not frequent and the nature of the people who he should not be associating with. And I'll just... I think it's a good example, so I think it bears just stating, Your Honor. In Rachmatov, the condition which this Court affirmed on an overbreadth challenge was that the individual is barred from associating with, quote, any individual with an affiliation to any terrorist organization, organized crime group, gang, or any criminal enterprise or terrorist enterprise. That is significantly broader than the condition that's being opposed on this defendant. That was affirmed by this Court. And similarly, in that case, when it came to the kind of turf aspect that Your Honor was asking about, this Court upheld the condition prohibiting the defendant from, quote, frequenting any establishment or other locale where a terrorist organization, organized crime group, gang, or other criminal enterprise may meet. Again, significantly broader than the condition that's being challenged here. And in that case, on facts, similar to facts we have here where that was found, the justification for that was found in the record. It wasn't stated by the district court itself. This Court affirmed that condition. That's just one example. There are numerous other examples where this Court has affirmed conditions that are essentially identical to the conditions being challenged here. All right. Counsel, thank you. Thank you, Your Honor. All right. We reserve Mr. Urowitz two minutes on rebuttal. Thank you, Your Honor. So I certainly dispute the government's view of plain error. It's not the appellant's burden to establish a particular case that in this case the exact scenario was struck down by this Court. As Judge Merriam pointed out, all of these involve fundamental rights. The test is this binding Supreme Court precedent for the protection of these rights, and that should be enough to establish plain error review, to establish that the error was plain. The fact that what the government says is, oh, let's wait 10 years from now when he gets out on supervised release, and then if an issue comes up, he could defend himself when he gets charged with a supervised release. Well, one effect of plain error is that if an objection had been raised at the time to his taking medicines, the Court would have had the opportunity to make further and perhaps sufficient explanations for it. Judge Jacobs, it is always better if an objection is raised before. I wasn't counsel in the district court. But the question is now what do we do with a defendant who has these conditions that are imposed on him which do interfere? He would have to concede that these conditions taken together maximize the chances that he will remain at liberty for the rest of his life, that he will not frequent places where he is tempted by old associations to be drawn into criminal activities, that he will stay on his meds in the phrase so that he doesn't go berserk or hurt himself or others or suffer depression. I mean, all of these things are – these involve fundamental rights. But you would agree that there's every reason why somebody would not object to them because they're very good for him. Your Honor, they could be – there are special conditions that could be imposed that are very good for him. The problem is – Why aren't these – Because they're so – as Judge Merriam said, I don't think it's good for a defendant not to be able to visit, for example, his family because they may happen to live in what's called the Biloxi neighborhood. The Rachmaninoff case that the government talked about, what it said was a locale where they may meet. That's talking about a specific place. We're talking about a neighborhood here, a completely undefined neighborhood. Gangs have turf. I'm sorry? Gangs have turf. That's how they make their money. I know. They exclude other people. And nobody in this courtroom seems to even know what that turf is, what turf we're talking about.  I'm sorry? They don't publish maps. But the government – If you're in the life, you may be expected to know what they are. And if you don't and somebody violates you, you can explain to the court that you didn't realize that 18th Street and Avenue A belongs to this gang or another. But, Your Honor – But if you know it, if you know it, it's in his interest to stay away from it. Isn't it? It's certainly in his interest to stay away from people that are associated with it. The question is now we're talking about this prohibition extends further. It extends, for example, if he takes a bus through the neighborhood. Every day to get to his parents who happen to live in that neighborhood. That's the problem here. But you wouldn't say that somebody frequents a bar because they walk past it to go to work, would you? He's not frequenting the bar, but he's frequenting that neighborhood which the bar is in. And that would – You know, the condition doesn't say he can't go into the neighborhood. It says he can't affiliate with any gang members, particularly members and associates of any gang or infrequent – or frequent neighborhoods. It's a separate clause. Okay. Or frequent neighborhoods that are known to be controlled by the blitz again. That's the problem here. But he's – Known to be controlled, right? So if he knows that the neighborhood is controlled, he should stay away. And let's say – Is that so bad? Let's say his parents live in that neighborhood. Then he can probably ask his probation officer if it's okay. I mean – And then we're delegating to the probation officer the enforcement of – Yeah, okay. Thank you, Your Honor. Thank you, counsel. Thank you both. We'll take the matter on submission.